# In the United States Court of Federal Claims

No. 24-371C

(Filed: June 11, 2024)

```
*************************************
                                    *
CLIFFORD EUGENE SNYDER, JR.,        *
                                    *
                Plaintiff,          *
                                    *
       v.                           *
                                    *
THE UNITED STATES,                  *
                                    *
                Defendant.          *
                                    *
*************************************
```

## OPINION AND ORDER

Plaintiff Clifford Eugene Snyder, Jr., appearing *pro se,* was formerly employed by the United States Department of the Army as a civilian employee with the Medical Research and Development Command ("MRDC"). Compl. at 1–2. In this position, Plaintiff alleges that he was entitled to earn a bonus payment which has not been paid to him. He estimates that the amount of bonus pay that he is entitled to is $3,232. Compl. at 2.

In lieu of an answer, the Government moves the Court pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), to dismiss Plaintiff's Complaint because Plaintiff fails to identify a money-mandating source of law that provides a right to recover money damages against the United States. Thus, the Government argues that Plaintiff's Complaint falls outside this Court's jurisdiction.

For the reasons set forth below, the Government's Motion to Dismiss is **GRANTED.**

### I.     FACTS

As an employee at MRDC, Plaintiff was paid a base salary and locality pay and had the opportunity to earn a bonus lump sum payment under a Pay for Performance Management System ("PPMS"). Compl. at 2. As required by the system, his performance would be evaluated annually. *Id.*

In October 2021, Plaintiff received a performance payment in the amount of $3,232 for an earlier performance period.[1] *Id.* Subsequently, in the performance evaluation period of July

---

[1] Plaintiff does not indicate the performance evaluation period which the October 2021 bonus payment covered or the performance rating he received for the prior performance period.

1, 2022, through June 30, 2023, Plaintiff received a "'Superior' or 'A' rating" for his performance." *Id.* Because he received this performance rating, Plaintiff expected to receive a bonus lump sum payment in early October 2023, as he did in 2021, but which he did not receive. *Id.* Plaintiff sought assistance from the Command Inspector General of the MRDC, but his request was denied. *Id.* Accordingly, Mr. Snyder brings this action seeking damages in the amount of $3,232, which he estimates is what he would have received as a performance bonus. *Id.*

## II.     Standard of Review

Whether the Court possesses subject-matter jurisdiction is a "threshold matter" that the parties can raise at any time and that the Court has a continuing independent obligation to determine exists. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). The Tucker Act waives sovereign immunity for claims against the United States "not sounding in tort[] that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States." *Schneiter v. United States*, 159 Fed. Cl. 356, 366 (2022) (citing 28 U.S.C. § 1491(a)(1)). The Tucker Act itself, however, "does not create substantive rights. Rather, it is a jurisdictional provision, "that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)." *Holmes v. United States*, 657 F.3d 1303, 1309 (Fed. Cir. 2011) (quoting *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009)). The Federal Circuit has explained that the substantive right must stem from "a separate source of substantive law that creates the right to money damages," such as a money-mandating constitutional, statutory, or regulatory provision. *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc).

To qualify as a money-mandating source of law, a statute or regulation "must be such that [it] 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Roberts v. United States*, 745 F.3d 1158, 1162 (Fed. Cir. 2014) (quoting *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003)). In that regard, "[i]t is enough 'that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages." *Id.* (quoting *White Mountain Apache Tribe*, 537 U.S. at 473). "A statute or regulation 'providing for solely discretionary payment of money,' however, 'does not give rise to 'a right to recover money damages from the United States.'" *Crawley v. United States*, 149 Fed. Cl. 258, 267 (2020) (quoting *Roberts*, 745 F.3d at 1163). If the Court concludes that "the source as alleged and pleaded is not money-mandating, the court shall so declare and shall dismiss the cause for lack of jurisdiction." *Fisher*, 402 F.3d at 1173 ("[T]he absence of a money mandating source [is] fatal to the court's jurisdiction under the Tucker Act.").

When deciding a motion to dismiss pursuant to RCFC 12(b)(l), the Court "assume[s] all factual allegations [in the complaint] to be true and . . . draw[s] all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995) (citations omitted). On a motion to dismiss for lack of subject-matter jurisdiction, "the plaintiff bears the burden to show by a preponderance of the evidence that the district court has subject matter jurisdiction." *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1383 (Fed. Cir. 2002). If a defendant challenges this Court's jurisdiction, the plaintiff cannot rely merely upon allegations in the complaint, but

must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936).

Pleadings of a *pro se* plaintiff are held to a less stringent standard than those of litigants represented by counsel. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). A *pro se* plaintiff, however, is not excused or exempt from meeting the Court's jurisdictional requirements. *See Henke*, 60 F.3d at 799.

### III.   Discussion

Employees of MRDC are eligible for bonus payments. The enabling regulation for these bonuses is derived from the United States Office of Personnel Management ("OPM") and is titled the "Laboratory Personnel Management Demonstration Project" ("PDP"). The PDP regulation provides that, "The performance appraisal system will link compensation to performance through annual performance evaluations and performance ratings." *Id.* at 10447. The regulation further explains that "Employees will receive an academic-type rating of "A", "B", "C", or "F" depending upon the percentage of goal attainment," and that "Employees rated "B" or higher will be eligible to receive performance-based pay increases and/or bonuses." *Id.* at 10448.

Further, the PDP regulation confers on supervisors the authority to "recommend[]" a performance bonus based on MRDC management's appraisal of an employee's performance and the employee's assigned performance score and rating. *Id.* The regulation provides that during a meeting between "employee and supervisor, the supervisor informs the employee of . . . any recommended related pay increase, bonus, award, or other personnel action." *Id.*

The PDP regulation governs MRDC's bonus payment system. 63 Fed. Reg. 10440-01 (Mar. 3, 1998). As such, the PDP regulation authorizes MRDC to award such bonuses and contemplates that the MRDC's implementing instructions will provide greater detail for bonus payment systems, "The system will have the flexibility to be modified, if necessary, as more experience is gained under the project. Details of the system may be found in the implementing instructions." 63 Fed. Reg. 10440-01, at 10447. Thus, on February 20, 2020, MRDC implemented a PPMS policy which provides instructions for the bonus payment system at issue in this case.

MRDC's PPMS policy "establish[es] the policy guidance and administrative direction on the various components of the [PPMS]." PPMS, MRDC at 1 (Feb. 20, 2020), https://mrdc-pdp.health.mil/index.cfm?p=policies. The policy states that it applies to all employees "covered by the provisions of [OPM's PDP]." *Id.* Importantly, the PPMS policy defines the "pay for performance bonus payment [as] constitut[ing] a discretionary award" "cash payment [that is] not part of the [employee's] basic pay for any purposes." *Id.* at 5, 17.

Plaintiff claims that he is entitled to recover his bonus because the PDP regulation mandates that his "A" rating entitled him to a performance bonus. Plaintiff cites four authorities establishing jurisdiction and entitlement to recover his performance bonus. *See* Compl. at 2. In particular, he cites the following sources as money mandating thereby giving this Court

jurisdiction: (1) The PDP Regulation; (2) MRDC's PPMS Policy; (3) 5 U.S.C. § 4703; and (4) 5 C.F.R. Part 470.

The Government disagrees arguing that none of these regulations or policies convey jurisdiction upon this Court. The Court agrees with the Government.

### A. The Court Lacks Jurisdiction Over the PDP Regulation.

Plaintiff alleges that the PDP Regulation establishes jurisdiction and entitlement to recover his performance bonus.[2] *See* Compl. at 2. For jurisdiction to exist, however, "the regulation[] must be such that they 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Roberts v. United States*, 745 F.3d at 1165 (citing *White Mountain Apache Tribe*, 537 U.S. at 472). The regulation cited here, however, does not provide a basis for the Court to exercise jurisdiction because the regulation is money-authorizing and not money-mandating.

In *Roberts*, the Federal Circuit examined whether the Department of State Standardized Regulations ("DSSR") were money-mandating with respect to payments of living-quarters allowances. *See id.* at 1162. The DSSR provided that living-quarters allowances "may be granted to employees recruited outside the United States" if those employees satisfied certain eligibility conditions. *Id.* at 1163. The DSSR also contemplated further implementing regulations to determine the scope of an employee's eligibility for a living-quarters allowance and whether that allowance should be paid. *Id.* at 1164.

On these facts, *Roberts* found that the DSSR was "not money-mandating" because it "does not on its face mandate [living-quarters allowances]" and instead "provides only baseline requirements for [living-quarters allowance] eligibility and contemplate[s] further implementing regulations." *Roberts*, 745 F.3d at 1164. The court further explained that the DSSR, and its authorizing statute, "could only become money-mandating if further regulations were implemented requiring payment." *Id.*

Thus, the Federal Circuit held that a regulation is not money-mandating when the language of the regulation "only authorizes but does not require the payment of money . . . and contemplates that further implementing regulations will be issued defining the circumstances in which money will be paid." *Roberts*, 745 F.3d at 1165. In those circumstances, the regulation is merely "money-authorizing" and consequently does not have a money mandating effect standing by itself. *Id.* at 1165.[3]

---

[2] In his Complaint Plaintiff mistakenly cited a notice of funding availability issued by the United States Department of Housing and Urban Development, 60 Fed. Reg. 10439 (Feb. 24, 1995), when he intended to cite the PDP regulation issued by the OPM. Plaintiff filed a document correcting this error. *See* Correction of Erroneous Citation at 1, ECF No. 6.

[3] Although the Court in *Roberts* found that the DSSR alone did not create jurisdiction, the Court construed the combination of an instruction and order with a statute, 5 U.S.C. § 5922(c), and the DSSR and the further implementing regulations as money mandating because these

The holding in *Roberts* is instructive in this case.  First, the regulation here, similar to the DSSR examined in *Roberts* contemplates further implementing instructions defining circumstances which money will be paid.  *Id.* at 1165.  The PDP regulation states, "The system will have the flexibility to be modified, if necessary, as more experience is gained under the project.  Details of the system may be found in the implementing instructions."  63 Fed. Reg. 10440-01, at 10447.

Second, the PDP regulation, similar to the DSSR in *Roberts*, establishes a framework for a bonus payment system that is facially devoid of mandatory payment language and that emphasizes a purely discretionary performance bonus allocation for eligible employees.  Most significant is the language used in the provision concerning the performance bonus at issue here.  The regulation provides that an employee who receives a performance evaluation of "'B' or higher . . . will be **eligible** to receive performance-based . . . bonuses."  63 Fed. Reg. 10440-01, at 10448 (emphasis added).   The use of the word, "eligible" signifies that the PDP regulation merely authorizes rather than mandates the payment of performance bonus awards.

Notably, the regulation also confers on supervisors the authority to "recommend[]" a performance bonus based on MRDC management's appraisal of an employee's performance and the employee's assigned performance score and rating.  *Id.*  The PDP regulation provides that during a meeting between "employee and supervisor, the supervisor informs the employee of . . . **any recommended related pay increase, bonus, award, or other personnel action**."  *Id.* (emphasis added).

The regulation's use of the terms "will be eligible" and "recommend[]" signify that an employee who satisfies certain performance standards qualifies for consideration for, but is not guaranteed, a performance bonus, and that a supervisor may in turn suggest to the MRDC that such a bonus be awarded.  *Id.*  The use of the term "recommended" underscores the advisory nature of performance evaluation outcomes and indicates that a supervisor may propose or suggest to MRDC management that a performance bonus should be awarded but commits the final decision regarding that bonus award to the discretion of MRDC management.

---

sources collectively triggered payment.  *Roberts*, 745 F.3d 1158, 1166-67.  The Court particularly focused on the language of 5 U.S.C. § 5922(c) which provides that allowances "shall" be paid where regulations require such payment.  *Id.* at 1166.  In his Sur-Reply, Plaintiff argues that *Roberts* supports jurisdiction in this case.  ECF No. 15 at 1-2.  Plaintiff argues that just as the Court in *Roberts* collectively assessed four sources of law as money mandating, this Court should consider the PDP regulation as money mandating.  *Id.*  Plaintiff, however, fails to explain how the facts of this case are similar to the facts in *Roberts*.  Instead, Plaintiff's argument is conclusory.  He argues that the language in the PDP regulation is "mandatory rather than permissive, . . . is best read as an entitlement, . . . and is clear on who assigns a bonus pursuant to an academic-type rating."  ECF No. 15 at 3.  Plaintiff does not elaborate on this argument further.  Plaintiff also argues that the Court should consider a combination of sources when addressing jurisdiction, but Plaintiff only points to one source, the PDP regulation.  This Court holds, however, as detailed above, that the PDP regulation is not money mandating.

5

Because the regulation authorizes "solely [a] discretionary payment of money," *Roberts*, 745 F.3d at 1163, it consequently "does not give rise to 'a right to recover money damages from the United States.'" *Crawley*, 149 Fed. Cl. at 267 (quoting *Roberts*, 745 F.3d at 1163). Therefore, the PDP regulation does not provide a basis for Tucker Act jurisdiction in this case.

### B.  The Court Lacks Jurisdiction Over MRDC's PPMS Policy.

Plaintiff also references MRDC's PPMS policy as support for his claim. MRDC's PPMS policy, however, defines the "pay for performance bonus payment [as] constitut[ing] a **discretionary award**" "cash payment [that is] not part of the [employee's] basic pay for any purposes." Pay for Performance Management System ("PPMS"), MRDC at 5, 17 (Feb. 20, 2020), https://mrdc pdp.health.mil/index.cfm?p=policies (emphasis added).

By "providing for [a] solely discretionary payment of money," the PPMS consequently fails to establish a basis for Tucker Act jurisdiction in this case. *Crawley*, 149 Fed. Cl. at 267. Accordingly, MRDC's PPMS policy is not a money-mandating source of substantive law that provide Plaintiff a right to recover money damages from the United States. *Fisher*, 402 F.3d at 1172.

### C.  The Court Lacks Jurisdiction Over 5 U.S.C. § 4703.

Plaintiff also cites 5 U.S.C. § 4703 as the "relevant law" for his claim. Compl. at 2. This statute falls within the category of statutes under the Civil Service Reform Act governing Federal personnel research programs and demonstration projects. *See* 5 U.S.C. §§ 4701–4705.

The statute provides the Office of Personnel Management ("OPM") with broad authority to "conduct and evaluate demonstration projects." 5 U.S.C. § 4703. 5 U.S.C. § 4703, however, contains no provision either granting a right to recover money damages or mandating the payment of performance bonuses to employees operating within OPM-sanctioned demonstration projects. Further, the larger act in which the statute appears does not contain any such provision. Therefore, 5 U.S.C. § 4703 does not provide a basis for Tucker Act jurisdiction in this case.

### D.  The Court Lacks Jurisdiction Over 5 C.F.R. Part 470.

Plaintiff cites 5 C.F.R. Part 470 as the "relevant . . . regulations" for his claim. Compl. at 2. This series of regulations, however, is equally unavailing. Like their authorizing statute, the regulations in 5 C.F.R. Part 470 contain no provision granting any right of recovery for money damages or mandating the payment of performance bonuses to employees operating within OPM-sanctioned demonstration projects. Indeed, nowhere in that series of regulations do the terms "performance pay" or "performance bonus" even appear. Therefore, 5 C.F.R. Part 470 likewise does not provide a basis for Tucker Act jurisdiction in this case.

### IV.  Conclusion

Because Plaintiff fails to allege any source of law that mandates the payment of the performance bonus to which he claims entitlement, the Court **GRANTS** the Government's

Motion to Dismiss Plaintiffs' Complaint pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction.  The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Edward J. Damich  
EDWARD J. DAMICH  
Senior Judge